UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § | |
| v. | § § | CIVIL NO. 4:19-CV-100-SDJ |
| PHILLIP MICHAEL CARTER, ET AL. | § § § | |

**<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</u>**

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the magistrate judge pursuant to 28 U.S.C. § 636. On September 4, 2020, the magistrate judge entered proposed findings of fact and recommendations (the "Report"), (Dkt. #84), that Plaintiff's Motion for Summary Judgment Against Defendant Phillip Michael Carter and Default Judgment Against Defendant Richard Gregory Tilford and Brief in Support, (Dkt. #61), be granted.

Carter timely filed objections to the Report ("Carter's Objections"), (Dkt. #86), and the Securities and Exchange Commission (the "SEC") filed a response (the "Response"), (Dkt. #88). Tilford, proceeding pro se, filed untimely objections ("Tilford's Objections"). (Dkt. #89).[1] The SEC filed a response to Tilford's Objections. (Dkt. #90).

---

[1] Instead of timely filing objections to the Report, on September 18, 2020, Tilford contacted counsel for the SEC. Tilford stated that he received the Report by email on September 9, 2020, and needed a five-day extension, i.e. until September 23, to file objections. The SEC replied to Tilford, copying the Court, stating that the SEC did not oppose Tilford's requested extension. Tilford did not contact the Court or file objections until September 28, 2020, twenty-four days after the Report was issued and nineteen days after Tilford represented receiving the Report.

1

The Court has reviewed de novo Carter's Objections and Tilford's Objections (collectively, the "Objections") and is of the opinion that the findings and conclusions of the magistrate judge are correct and that the Objections are without merit as to the ultimate findings of the magistrate judge. The Court hereby adopts the findings and conclusions of the magistrate judge as the findings and conclusions of the Court.

## I. BACKGROUND

### A. Factual Background[2]

Between approximately May 2015 and February 2017, Carter, operating as a real estate developer in Texas, and his affiliates Bobby Eugene Guess and Tilford, Guess's employee (collectively, "Defendants"), raised at least $44 million from over 270 investors in unregistered securities offerings through materially misleading statements and omissions. *See* (Dkt. #44 at 3; Dkt. #61-3 at 9–10; Dkt. #61-4; Dkt. #61-5 at 1–12). Specifically, Carter, Guess, and Tilford sold short-term, high-yield promissory notes that were not registered with the SEC. (Dkt. #44 at 3).

Defendants personally met with potential investors and participated in and led presentations for potential investors. *See* (Dkt. #61-7 at 27, 33, 39; Dkt. #61-8 at 5). Carter provided solicitation materials to Guess and Tilford. *See* (Dkt. #61-11 at 40). In solicitations, the investors were specifically told that their money would be used only in connection with Carter's real estate development business. *See* (Dkt. #61-7 at 27; Dkt. #61-8 at 4; Dkt. #61-9 at 10).

---

[2] The factual background of this case is set out in further detail by the magistrate judge in the Report and is not reproduced here in its entirety.

Defendants issued the promissory notes under misleadingly named shell companies, soliciting individuals to invest in entities with company names nearly identical to the names of Carter's real estate companies; however, the shell companies had no underlying assets or actual connection to Carter's real estate developments. *See* (Dkt. #61-3 at 3; Dkt. #61-11 at 1–4, 41–42). For example, one of Carter's real estate companies was named "North-Forty Development, LLC," but notes were issued to Defendants' investors by Guess's company, "North Forty Development, LLC," a company that had no actual relationship with or connection to the real estate projects that Defendants were promoting. *See* (Dkt. #61-3 at 1; Dkt. #61-3 at 3 n.2). Defendants misrepresented to the investors that they were investing in Carter's real estate companies and, importantly, that such companies were backed by hard assets. *See* (Dkt. #61-7 at 27, 33, 39; Dkt. #61-8 at 3; Dkt. #61-11 at 43). As a result, investors held unsecured promissory notes issued by shell companies with no assets. Defendants also misrepresented Carter's professional background, falsely representing to investors an inflated resume of education and experience. *See* (Dkt. #61-8 at 10; Dkt. #61-9 at 16; Dkt. #61-11 at 7, 13–15).

On May 16, 2016, the United States Attorney's Office for the Eastern District of Texas issued a letter to Carter, advising him that he was "a target of a federal criminal investigation" in which it was alleged that Carter had committed money laundering, wire fraud, mail fraud, loan fraud, and securities fraud. (Dkt. #61-11 at 16). Carter did not disclose to investors that Carter and Guess were under federal investigation. *See* (Dkt. #61-7 at 29, 35, 40). Investors testified that if they had known

3

that the U.S. Attorney's Office had alerted Carter that he was a target of a criminal investigation, they would not have invested their money with Carter. (Dkt. #61-7 at 29, 35, 40).

Although Carter used some of the funds raised from investors to develop real estate projects, he also misappropriated funds to pay $1.2 million on a personal IRS tax lien and more than $1 million for other personal use, including but not limited to, moving investor-related funds to his personal accounts and funding an exotic-game-hunting ranch. (Dkt. #61 at 9, 14). Carter never disclosed to investors that he intended to use, or that he actually used, their invested funds in this fashion. *See* (Dkt. #61- 3 at 5–8; Dkt. #61-6 at 41–43; Dkt. #61-7 at 27, 35, 40–41; Dkt. #61-8 at 5; Dkt. #61-9 at 11). As of September 2018, the investors were owed more than $45 million. *See* (Dkt. #61-3 at 3).

For his role in selling the promissory notes, Tilford earned a $49,000 salary from Guess but also believed he would receive a percentage of any amount that remained after Carter eventually paid all the note-holding investors. (Dkt. #61 at 11). Tilford was not registered with the SEC as a broker or dealer. (Dkt. #61 at 11).

Carter has refused to testify. *See* (Dkt. #61-12 at 26). In Carter's Objections, he states that he is unable to provide testimony rebutting the SEC's factual allegations concerning his involvement in the transactions at issue due to concerns of waiving his privilege against self-incrimination under the Fifth and Fourteenth Amendments. *See* (Dkt. #86 at 2).

## B. Procedural Background

The SEC's summary-judgment motion against Carter argues that Carter violated: (1) Section 17(a) of the Securities Act of 1933 ("Securities Act"); (2) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Commission Rule 10b-5 thereunder; and (3) Sections 5(a) and 5(c) of the Securities Act. (Dkt. #61 at 10). The magistrate judge has recommended that summary judgment be granted as to all pending claims against Carter. (Dkt. #84). The Court agrees and adopts the findings and conclusions of the magistrate judge as the findings and conclusions of the Court as to the SEC's claims against Carter.

As to Defendant Tilford, the SEC's motion asks for default judgment against Tilford, or, in the alternative, summary judgment. (Dkt. #61 at 9). Tilford only began to participate in the proceedings once a Clerk's Entry of Default was issued. *See* (Dkt. #49). Tilford filed a number of unresponsive documents during the pendency of the Motion. *See* (Dkt. #52, #56, #62, #63, #67, #70, #71, #89). However, considering Tilford's participation in the litigation and agreeing with the SEC's counsel after discussion at a hearing on September 2, 2020,[3] the magistrate judge, determined that it was appropriate to consider the motion as a summary-judgment motion as to both Carter and Tilford.

The Court agrees with the magistrate judge's conclusion. Although Tilford's filings have been unresponsive, read liberally, they evidence Tilford's denial of the

---

[3] The hearing was noticed to all parties. *See* (Dkt. #81). While counsel for Plaintiff, Carter, and Guess appeared, Tilford failed to appear.


claims made against him in this case. *See, e.g.*, (Dkt. #52 at 2) (stating that Tilford "den[ies] all accusations against [him] as fraud and pattern and practice of racketeering by SEC . . . ."). Moreover, the Fifth Circuit generally disfavors default judgments. *See, e.g.*, *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."); *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (explaining that "any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits.") (internal quotations omitted). The Court adopts the finding and conclusion of the magistrate judge that the SEC's motion as to Tilford will be considered only as a summary-judgment motion, and the Court will not enter a default judgment against Tilford.

The SEC's summary-judgment motion against Tilford argues that Tilford violated: (1) Section 17(a)(2) of the Securities Act; (2) Section 10(b) of Exchange Act and Rule 10b-5 thereunder; (3) Sections 5(a) and 5(c) of the Securities Act; and (4) Section 15(a) of the Exchange Act. The magistrate judge has recommended that summary judgment be granted as to all such pending claims against Tilford. The Court agrees and adopts the findings and conclusions of the magistrate judge as the findings and conclusions of the Court as to the SEC's claims against Tilford.

## II. DISCUSSION

The record establishes that Defendants Carter and Tilford used misstatements, omissions, and a deceptive scheme to raise more than $44 million by

assuring investors that their investment funds would be placed in low-risk investments "backed by hard assets." In truth, investors held promissory notes signed by shell companies that had no actual connection to or security interest in the real estate projects that Defendants promoted. Although Carter used some investor funds to develop projects, he also misappropriated millions for his own personal use, including, among other things, to pay a personal federal income tax debt and to fund his personal exotic-game-hunting ranch.

### A. Carter and Tilford Participated in the Sale of Unregistered Securities in the Form of Promissory Notes.

Carter's and Tilford's actions violated Sections 5(a) and 5(c) of the Securities Act because they raised millions of dollars by selling securities without registering those securities offerings with the Commission. *See* 15 U.S.C. §§ 77e(a), (c). These statutory provisions prohibit the unregistered offer or sale of securities in interstate commerce unless an exemption from registration applies. *SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137, 155 (5th Cir. 1972).

Section 5 is a strict-liability statute; therefore, a defendant's intent is irrelevant. *Swenson v. Engle*, 626 F.2d 421, 424 (5th Cir. 1980). A prima facie case for a violation of Sections 5(a) and 5(c) is established when: (1) defendants, directly or indirectly, offered or sold securities; (2) no registration was in effect or filed with the Commission for the offer or sale of those securities; and (3) interstate transportation or communication or the mails were used in connection with the offer and sale. *See* 15 U.S.C. §§ 77e(a), (c); *Cont'l Tobacco*, 463 F.2d at 155. Once a prima

7

facie case is established, the burden shifts to defendants to prove that the securities offerings fall within an exemption to Section 5. *Cont'l Tobacco*, 463 F.2d at 156.

Here, it is uncontested that Carter and Tilford personally solicited promissory-note investors and directed all of the investors' funds to accounts that Carter controlled. And governing law confirms that the notes were securities. *See Reves v. Ernst & Young*, 494 U.S. 56, 64–65, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990) (holding that this issue is governed by Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act, both of which define the term "security" to include "any note."). A note is presumed to be a security unless it bears a "family resemblance" to certain judicially crafted exceptions of notes that are not securities. *Id.* at 65–70. For this analysis, *Reves* adopted a four-factor test to distinguish promissory notes issued and purchased for investment purposes, which are securities, from promissory notes issued and purchased for some other purpose, which are not. The test examines: (1) the motivations that would prompt a reasonable buyer and seller to enter into a transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether there is any risk-reducing factor, such as the presence of another regulatory scheme. *Id*.

Under *Reves*, the promissory notes at issue are plainly securities. As the magistrate judge properly concluded, the record evidence shows that the promissory notes were (a) motivated by a desire for investors to obtain profit, (b) offered widely by radio advertisements and through presentations, (c) as reflected in the explicit expectations of noteholders in this case, a reasonable member of the investing public

8

would consider the notes to be passive investments, and (d) there is no non-securities regulatory scheme that would significantly reduce the risk of the investments offered in this case. For these reasons, the promissory notes offered and sold by Carter and Tilford were securities.

The remaining elements of a prima facie case under Section 5 are also met in this case. It is undisputed that all offerings of the promissory notes described herein were unregistered. Indeed, the notes themselves bore an acknowledgement that they would not be registered under the Securities Act or "qualified under applicable state securities laws. . . ." (Dkt. #61 at 22). It is also uncontested that the promissory notes were offered and sold through interstate commerce. Defendants used radio ads to find investors, communicated with potential investors through email, obtained investment from at least one out-of-state investor, and obtained funds from investors through wire transfer. Because the record evidence establishes a prima facie Section 5 violation, the burden of proof shifts to Carter and Tilford to establish an exemption from registration. *See SEC v. Ralston Purina Co.*, 346 U.S. 119, 124–26, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). Carter and Tilford have failed to demonstrate that any exception or exemption applies here.

For all of these reasons, the SEC is entitled to summary judgment that Carter's and Tilford's actions violated Sections 5(a) and 5(c) of the Securities Act.

**B. Carter and Tilford Defrauded Investors.**

Carter and Tilford made material misstatements and omissions to further a deceptive scheme that raised more than $44 million from unwitting investors.

9

Because there is no genuine issue of material fact regarding Carter's and Tilford's fraud, the Court will grant summary judgment on the SEC's claims under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### i. Carter is liable under Rules 10b-5(a), (c) and Sections 17(a)(1), (3).[4]

Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) prohibit any person from employing "any device, scheme, or artifice to defraud" or engaging in any "act, practice, or course of business" which operates as a fraud or deceit, in connection with the purchase or sale of a security. Similarly, Sections 17(a)(1) and 17(a)(3) of the Securities Act prohibit any person, in the offer or sale of a security, from employing "any device, scheme, or artifice to defraud" or engaging in any "transaction, practice, or course of business" which operates as a fraud or deceit. Proof of scienter is required for Rules 10b-5(a) and (c) and Section 17(a)(1), whereas at least negligence is sufficient for Section 17(a)(3). *Aaron v. SEC*, 446 U.S. 680, 691, 697, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).

Carter's actions demonstrate a course of conduct designed to deceive investors. The promissory notes he offered to investors were steeped in deception. Each note was issued by a shell company that had no actual connection to the real estate developments that they funded, but each possessed entity names that were deceptively similar to the actual companies Carter used to conduct real estate

---

[4] The Court notes that Tilford is not alleged to have violated these subsections of Securities Act Section 17(a) or Exchange Act Rule 10b-5(a) or (c).

10

operations. Despite telling investors that their investments were "backed by hard assets," Carter knew that the investments were not, in fact, secured. Similarly, Carter lied about his professional and educational background while soliciting money from potential investors. For example, Carter claimed to hold a degree in chemical engineering from the University of Virginia. He has no such degree. Carter also claimed to have worked as a project engineer for a Texas Instruments construction team. This was also untrue.

Further, Carter received a target letter from federal criminal authorities while he was offering and selling securities to investors but failed to disclose this material fact. And while Carter advised potential investors that he would use their investments to fund real estate development projects, the record shows that after he began raising money, Carter used $1.2 million in direct investor funds to pay off his own personal tax lien and used investor-related proceeds to fund his personal exotic-game-hunting ranch.

In short, Carter intentionally made, disseminated, and directed others to make and/or disseminate various materially false statements. In so doing, Carter employed a "device, scheme, or artifice to defraud," in violation of Rule 10b-5(a) and Section 17(a)(1), and engaged in an "act, practice, or course of business" that "operated as a fraud or deceit" on investors under Rule 10b-5(c) and Section 17(a)(3). *See Lorenzo v. SEC*, 139 S.Ct. 1094, 1100, 1101–02, 203 L.Ed.2d 484 (2019) (holding that knowing dissemination of misrepresentations with an intent to deceive violates Rule 10b-5(a) and (c) and Section 17(a)(1)); *see also Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir.

2019) (applying *Lorenzo* to Section 17(a)(3) because it "is virtually identical to Rule 10b-5(c).").

### ii. Carter and Tilford are liable under Rule 10b-5(b) and Section 17(a)(2).

Section 10(b) of the Exchange Act and Rule 10b-5(b) prohibit any person from "making any untrue statement of a material fact" or "omit[ting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading," in connection with the purchase or sale of a security. For purposes of Rule 10b-5(b), "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011). Section 17(a)(2) of the Securities Act prohibits any person, in the offer or sale of a security, from "obtain[ing] money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . ." 15 U.S.C. § 77q(a)(2). Proof of scienter is required for Rule 10b-5(b), whereas negligence is sufficient for Section 17(a)(2). *Aaron*, 446 U.S. at 691, 697.

The record shows that Carter personally made multiple material misstatements to investors and prospective investors and directed others to make and disseminate other material misstatements regarding his own professional and educational background. Because Carter himself had ultimate authority over numerous materially false statements issued to investors and prospective investors,

he violated Rule 10b-5(b). As a result of this conduct Carter received every dollar invested by noteholders and went on to misappropriate a significant portion of it. In so doing, Carter obtained money by means of his misrepresentations in violation of Section 17(a)(2). Likewise, as described herein, Tilford used misleading statements and material omissions described above to raise money from investors, personally netting for himself $49,000.

"[T]he standard for misrepresentation is whether the information disclosed, understood as a whole, would mislead a reasonable potential investor. [And a] statement or omitted fact is material if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *SEC v. Provident Royalties, LLC*, No. 3:09-CV-01238-L, 2013 WL 5314354, at *4 (N.D. Tex. Sept. 23, 2013) (alteration in original) (quoting *SEC v. Seghers*, 298 F.App'x 319, 328 (5th Cir. 2008)). As the Supreme Court has explained, an omitted fact is material if "disclosure of the omitted fact would have . . . significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 232, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (citation omitted). Thus, the antifraud provisions of the securities statutes and regulations impose a "'duty to disclose material facts that are necessary to make disclosed statements, whether mandatory or volunteered, not misleading.'" *SEC v. Fehn*, 97 F.3d 1276, 1290 n.12 (9th Cir. 1996) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504 (9th Cir. 1992)).

Carter's misstatements and omissions were material to investors, who would not have invested if Carter had told them that: (a) he misused their funds to pay

13

personal tax debts; (b) he misused project proceeds to fund his personal hunting ranch; (c) he was the target of a federal criminal investigation; (d) their investments were not "backed by hard assets" in any meaningful way; or (e) he lied to them about his professional and educational accomplishments. Tilford likewise misled investors about (a) Carter's misuse of their money to pay his personal tax debt, (b) Guess's criminal investigation, and (c) whether the investments were "backed by hard assets." At a minimum, such misstatements and omissions would have "significantly altered the total mix of information" available to any reasonable investor and were therefore material.

As to the remaining elements of the SEC's antifraud claims against Carter and Tilford, the record establishes that all of Carter's and Tilford's misstatements, omissions, and deceptive conduct had the same goal: to obtain capital from investors. Accordingly, this element of securities fraud has been satisfied in this case.

The scienter element is also met. Scienter is defined as a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In the Fifth Circuit, scienter is established by showing that a defendant acted intentionally or with severe recklessness. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (holding that scienter is an "'intent to deceive, manipulate, or defraud' or 'that severe recklessness' in which the 'danger of misleading buyers or sellers ... is either known to the defendant or so obvious that the defendant must have been aware of it'"). Severe recklessness is "limited to those highly unreasonable omissions or

misrepresentations" involving an "extreme departure from the standards of ordinary care . . . ." *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001).

Here, Carter and Tilford repeated known untruths and omitted critical information about the investments and intentionally defrauded investors, raising more than $44 million as a result. Such conduct, on its face, was intentional, or, at the very least, severely reckless. Finally, the evidence of scienter against Carter is reinforced by the adverse inference to be drawn from his repeated invocation of the Fifth Amendment right against self-incrimination. *See Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir. 1983) (explaining that, "while a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him . . . his refusal to testify may be used against him in a civil proceeding").

\* \* \*

For the foregoing reasons, and because no material question of fact remains regarding their violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the Court GRANTS the SEC's summary-judgment motion against Defendants Carter and Tilford.

**A. Tilford's Objections**

As set forth above, Tilford untimely filed Objections without leave of Court. *See* (Dkt. #89). Further, Tilford's Objections are twenty-six single-spaced pages in length and are therefore in violation of Local Rule CV-72(c), which states that "[o]bjections to reports and recommendations and any response thereto shall not exceed eight pages. No further briefing is allowed absent leave of court." Finally, Tilford's Objections do not comply with the Federal Rules of Civil Procedure. A party wishing

to object to the proposed findings and recommendations of a magistrate judge must "file *specific* written objections." FED. R. CIV. P. 72(b)(2) (emphasis added). "[T]he district court need not consider frivolous, conclusive, or general objections." *Matlock v. Kennedy*, No. 6:19-CV-276, 2020 WL 4237374, at *2 (E.D. Tex. June 22, 2020) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

Tilford's Objections are conclusory and largely unresponsive to the Report. *See, e.g.,* (Dkt. #89 at 1) ("To file a claim against of my [sic] RICHARD GREGORY TILFORD trust, I DEMAND, as beneficiary of said trust, a true bill from *any injured party swearing under penalty of perjury*, as to how I injured them. Only then will I be willing to pay the claim from my trust account. . . . I, richard gregory tilford, am not al4th [sic] Amendment slave-class citizen. I have corrected the master file with my living, Sovereign, Texian National Status."); (Dkt. #89 at 2) ("I, richard gregory tilford, do NOT consent to this suit, because the SEC (a for-profit Corporation) has committed fraud against my trust name RICHARD GREGORY TILFORD. This name was set up for my benefit linked to my birth certificate.").[5]

Broadly, Tilford's Objections are challenges to the Court's authority in this matter and the SEC's authority to bring claims against Tilford. *See, e.g.*, (Dkt. #89

---

[5] *See also* (Dkt. #89 at 14) ("Texas Constitution Article 1 Section 29 guards the people of Texas rights against the transgressions against the people of Texas rights. Any investigation of *someone else* is not a TRUE BILL or INDICTMENT and has NOTHING to do with me."); (Dkt. #89 at 19) ("I DO NOT CONSENT to the COURT magistrate ignoring my sworn fact in my affidavit of truth and consenting/condoning [counsel for SEC's] fraud, racketeering and deceptive trade practices!!!"); (Dkt. #89 at 24) ("You will not ignore my God-given fundamental liberty to be free from involuntary servitude. I alone am entitled to summary judgment in my favor. I stated factually that '*I have injured NO man, woman, or property*.' This fact has never been rebutted.").

at 3) ("I OBJECT, I OBJECT, I OBJECT!!! to this false statement of material fact. There has been NO verified complaints or evidence against me, nor affidavits of truth submitted by Plaintiff sworn under penalty of perjury, showing prima facie evidence. I caused no harm to anyone. The facts have been contested by me in every affidavit of truth, including the primary issue... my challenge to authority, jurisdiction and standing."). The Court has jurisdiction over this action under the Securities Act and the Exchange Act. Tilford's assertion regarding jurisdiction is vague, conclusory, and unsupported by law.

As Tilford's Objections were untimely filed without leave of Court, fail to comply with the Local Rules and the Federal Rules of Civil Procedure, and are wholly baseless and conclusory in nature, Tilford's Objections are **OVERRULED**.

**B. Carter's Objections**

In the Report, the magistrate judge overruled Carter's Objections to the summary-judgment evidence submitted by the SEC and found that an adverse inference should be found against Carter. *See* (Dkt. #84 at 7–11). Carter does not object to either of these findings, but, instead, argues that the evidence shows only that Carter was involved with the real estate work for which the subject funds were used. *See* (Dkt. #86 at 2). Carter also contends that the evidence does not show that he had the requisite knowledge that any statement he made concerning the use of the funds was false when he made it. *See* (Dkt. #86 at 2). Carter argues that representations regarding his background (i.e., false representations about his work experience and education) were not material. *See id.* Finally, Carter contends that the evidence does not establish scienter, arguing that "[t]here is no evidence that

17

Carter knew any of the statements he made to the prospective investors." (Dkt. #86 at 4).

The evidence establishes that Carter personally offered or sold unregistered securities and was not merely introduced to investors while others conducted sales, as argued by Carter. *See* (Dkt. #86 at 3). Carter met with investors to solicit investments himself and also provided solicitation materials to Guess and Tilford for their use in soliciting investments. *See* (Dkt. #61-7 at 27, 33, 39; Dkt. #61-8 at 5; Dkt. #61-11 at 40). Carter also signed all promissory notes from August 2016 through February 2017, raising $9.9 million in investments. *See* (Dkt. #61-3 at 3; Dkt. #61-5 at 14).

Additionally, even if the evidence only supported that Carter indirectly sold or offered to sell an unregistered security, Carter would still be liable pursuant to Section 5 of the Securities Act, which prohibits "any person, directly or indirectly," from selling or offering to sell an unregistered security. *See* 15 U.S.C. §§ 77e(a), (c). Thus, even if the evidence only supported that Guess and Tilford offered and sold securities on Carter's behalf, as previously discussed, or if the evidence only supported that Carter planned the scheme by which the securities were offered or sold in an unregistered transaction, (*see* Dkt. #61-11 at 1–4, 41–42), Carter could be held liable for a violation of the Securities Act. *See SEC. v. Friendly Power Co. LLC*, 49 F.Supp.2d 1363, 1371 (S.D. Fla. 1999) ("Even where the person or entity does not have individual contact with the purchasers of the securities, that person or entity has indirectly offered or sold that security to the public if he or it has employed or

18

directed others to sell or offer them, or has conceived of and planned the scheme by which the unregistered securities were offered or sold.").

Carter does not provide adequate support for his objection that false representations about his background were immaterial. As the Fifth Circuit has explained, "[a] misstatement or omission is material if there [is] a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003) (alteration in original) (internal quotation marks omitted) (quoting *Basic*, 485 U.S. at 231)). Representations about Carter's background, including the fact that he was being investigated for violations of federal criminal law, clearly amount to facts that would have "significantly altered the total mix of information made available." *Id*. In fact, investors testified that if they had known the U.S. Attorney's Office had alerted Carter that he was a target of a federal criminal investigation, they would not have invested their money with him. *See* (Dkt. #61-7 at 29, 35, 40).

Finally, Carter claims that the record evidence does not demonstrate scienter on his part. However, Carter fails to adequately support this objection. Under Fifth Circuit precedent, scienter may be established by a showing of "severe recklessness," i.e., "highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware

19

of it." *Broad*, 642 F.2d at 961–62. The uncontroverted evidence demonstrates multiple flagrant misrepresentations designed to overrepresent Carter's qualifications and trustworthiness, to keep important information from potential investors regarding the specifics of their investments, and to deliver less value than what was promised in exchange for their investments.

For these reasons, Carter's Objections are **OVERRULED**.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion for Summary Judgment Against Defendant Phillip Michael Carter and Default Judgment Against Defendant Richard Gregory Tilford and Brief in Support, (Dkt. #61), is hereby **GRANTED**. Accordingly, summary judgment on all pending claims against Defendants Carter and Tilford is **GRANTED**.

**So ORDERED and SIGNED this 28th day of October, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE